Good morning. Good morning. May I please record? My name is Alexander Gelberg. I represent the petitioner in this case, Mr. Edgar Chavez. I would like to reserve two minutes. Two minutes? Two minutes for about. Alright, thank you. Your Honors, this case centers on two main issues. Failure of the agency to consider, to conduct proper legal inquiry and consider the aggregate risk of harm, risk of torture to Mr. Chavez if he gets deported. Number two, agency's failure to engage with the expert testimony of Dr. Vanden, who concluded that Mr. Chavez would- I would like you to please speak up a little bit. I'm having difficulty hearing you. Sure. And the second is agency's failure- What's the first one again? The first one is failure of the agency to conduct proper legal inquiry. Into what issue? Aggregate risk of torture. What? Aggregate? Aggregate risk of torture. Aggregate risk, okay. And number two, agency's failure to engage with Dr. Vanden's testimony that- who concluded that Mr. Chavez would more likely than not be tortured if he's removed to El Salvador. Your point is that the agency did not adequately assess the evidence as to the probability of torture at the hands of or in the acquiescence of the government. Is that your point? Yes. And why- what did they not do that they should have done? They did not engage with Dr. Vanden's testimony as to particular circumstances and details of different accounts of torture. Well, okay, you presented contrary evidence, but why isn't this just a situation- now the BIA, my understanding is the IJ had a credibility determination against your client, but the BIA said, no, we're going to look at it and didn't adversely find for your client on that. But when you have contradictory evidence, because there was evidence both ways, how can- you know, because the BIA agreed with the other evidence more, isn't that a problem for you? I mean, that's what courts do. You know, when you hear evidence on both sides, you can believe some more than others or you can weigh some more than others, and when that happens, that's a pretty difficult standard to overcome on appeal. Your Honor, I understand that the BIA engaged in factual determination for different accounts of torture. Nonetheless, the agency must take into account highly probative and potentially dispositive evidence, and in this particular case, there's evidence that they failed to do so. So our position is that it has to go back to the agency. What is the evidence that you think is so highly probative that it is a legal error for the BIA not to take it into consideration? So the one that- the most important is Mr. Vanden's conclusion that assessed the aggregate risk of torture. He concluded that Mr. Chavez would be more likely not tortured from- By the government? By the government and by the gangs. And by the gangs, with the acquiescence of the government? Correct. He's an expert witness, and that gave his opinion, right? Correct. Does he have to be believed? He doesn't have to be believed, but there is no determination as to his credibility in the record. Well, except- well, there were things in terms of- because I think Dr. Vanden testified that gang members are usually between ages 9 and 10 and into their 20s, and he acknowledged that your client was 37 years old. He said he looked kind of young, but there were things that sort of took your client outside of the, you know, the age where it would be problematic, and I think that wasn't it- didn't he also- hadn't he done something about his tattoos, too? Yes. And he admitted that he really wasn't readily- your client admitted he wasn't readily identifiable as a gang member? I mean, it's like I could have been in a gang, but now that I've gotten a little more senior, I might not look so likely that I would be in the gang, and I've covered up my tattoos and all of that. Your Honor, if I may, I would like to address each of those points individually. So that sort of eroded on what Dr., you know, Vanden said. Yes, so as far as the age of recruitment that the board and the immigration judge referred to, and based on this, concluded that the- that was one of the factual determinations involved in concluding that Mr. Chavez wouldn't be tortured by the gangs. I submit, Your Honor, that the gangs and police on the streets of El Salvador will not be looking for Mr. Chavez's ID or birth certificate to verify his age. They're going to look at him and see, does he look young? Does he look like a member of- as far as his appearance, does he look young enough? And that's what- that's exactly what Dr. Vanden was alluding to, and if you look at the board, board's and immigration judge's opinion, they never engaged this testimony of Dr. Vanden. Now, as far as the tattoos, Your Honor- What do you mean by engage in the testimony? I mean, I understand you to mean that if Dr. Vanden says someone, something, to engage with the testimony is to accept it. On the other hand, there's evidence that this man has left the MS-13 gang following his death. He was released from prison in 2005. He's in his 40s. He joined the MS-13 when he was 8 or 9 years old in the United States. It's been a long time since then, and he's got a tattoo on his left foot, which is invisible. So, why- why isn't it available to the BIA to say, on the balancing of the evidence, we find that there's no probability, more likely than not, not possibility, a possibility that this man has left the MS-13 gang? Well, probability that he won't be tortured. But- but what we have to decide is not whether the agency discussed or did not discuss evidence, but whether there's substantial evidence to sustain the agency's finding. I mean, is there some case that says that the agency commits an abuse of discretion when they don't talk about certain evidence? Certainly, Your Honor, we cite those cases in- in the brief. One case is Cole v. Holder that- that says that- that- that case ultimately held that the- the agency failed to give reason- reasoned consideration to Mr. Cole's expert, and it held that it had to consider all highly probative and potentially dispositive evidence of record. And, certainly, there is a Moffitt v. Ashcroft case that- that talked about abuse of discretion when BIA fails to provide a reason- reasoned explanation. We submit, Your Honors, that our position here that the- the agency failed to engage in a proper legal inquiry to consider the aggregate risk of harm and didn't address and engage with the- Mr.- Mr. Edgar Chavez's- Mr. Cole's expert. Dr. Vanden's testimony. Your Honor, based on the record evidence, Petitioner has failed to demonstrate that the record compels the conclusion that he is more likely than not going to be tortured in El Salvador, either based on his former gang affiliation of MS-13, a rival gang of MARA-18, or the police. Can I ask you, just sort of jumping to it, since we've set the- there's not a lot of time, are you recommending- you were saying there's no jurisdiction because there wasn't exhaustion as to the aggravated felony, right? Correct. So, with regard to- And so, are you recommending partial dismissal and partial- dismiss in part, deny in part, or? Correct. Because he did not exhaust the particularly serious crime determination, there's no jurisdiction over that. He does not raise- it's just simply not before the board. The only thing that is- I'm sorry, before this Court- the only thing that's before this Court is the cat deferral determination. And that, again, is supported by substantial evidence in the record. Okay. I just wanted to frame your issue. So, let me get- I'm having difficulty hearing and understanding you. My apologies, Your Honor. Is that any better? Now, what you want is a dismissal of the asylum and withholding. There's no discussion of asylum in any of the briefs, but I imagine that denial is not raised on appeal. So, the withholding- Your Honor, in Petitioner's brief, they explicitly waive asylum. Could I finish, please, before- Before you answer my question, may I finish my question? I'm sorry, Your Honor. All right. Thank you very much. As to the withholding of removal, your position is that there is no discussion of the factors regarding a particular serious crime, and, therefore, it's only raised in the reply brief, and, therefore, it's waived, and we have no jurisdiction. Is that correct? It's- Our position on withholding of removal is that the agency determined that there was no particularly serious crime determination. Right. And that he did not exhaust that to the board. Right. And so this Court has no jurisdiction under 1252d1, which mandates that the specific argument in this case, which is not phrasing, which is that the six rebuttal factors or whatever that you would call them from matter of Y.L. need to be exhausted in the first instance. So, therefore, you agree with my statement. Thank you very much. Not jurisdiction. Correct, Your Honor. So what is your position about what is here and should be denied? So what is properly before this Court is the agency's denial of the cap deferral claim, and that is supported by record evidence, Your Honors. And Petitioner has not demonstrated that the record compels a contrary conclusion. What about Petitioner's argument that Dr. Vanden, Professor Vanden, was disregarded and his evidence was not considered at all by the BIA? Isn't that a violation of due process? Your Honor, that's not an accurate assessment of the record. It's clear from both decisions, both from the immigration judge and the board, that Dr. Vanden's testimony was completely considered. It was given recitations in the decision. It was discussed. It was even credited. The difference, though, is that unlike Petitioner's premise of his argument that this testimony of the expert was uncontroverted, that's simply false. It was. I'll give you a couple for instance. So, for example, on the age determination, Dr. Vanden, Mr. Chavez is 41 years old currently, soon to be 42 in a couple weeks. Dr. Vanden's report states, it is my strongly held professional opinion that there exists a group of young men, including Mr. Chavez. DHS counsel during testimony brought this back up and said, okay, now your report refers to gang members as being young. What is the average age? He said between 9 and 10, most likely into their 20s. Confronted with the fact that Mr. Chavez falls way outside this range, he admitted that it did. And his only rebuttal was that he looks young. This is not an expert opinion. Mr. Chavez was only on a telephone conversation with the expert. There's no evidence in the record that he looked at anything except the tattoo photos. If he looked at a photo of Petitioner, there's no evidence that it was a recent one. The IJ was in the better position to make a determination that this was not sufficient. Again, it's unpublished, but in Peterson-Palma, this was a basis for this court's denial of cat deferral by finding that there was evidence in the record that supports that the gangs in El Salvador target youth, not men in their 40s. In Peterson-Palma, this was the basis for the determination. Counsel for the appellant or Petitioner mentions that the tattoos weren't specifically discussed. What was the tattoos brought up in the testimony? What was the testimony and what are the logical inferences from that? To walk through, there was testimony regarding the tattoos. What the immigration judge found based on that testimony was that Petitioner did not demonstrate that he wouldn't be able to cover them up. Petitioner has five tattoos. One of them is an MS tattoo that's on his foot and below his ankle. That's the only one that is left that has a gang affiliation to MS-13. He had one other one previously, but was able to cover that up. There's a tattoo of his mom, his mother's name, a tattoo of a dragon, and a tattoo of Inca or Aztec warriors. What was more important was that Petitioner, when he was testifying, said, and I quote, if you were able to see a picture of me, my picture of me now, you wouldn't be able to trace any gang affiliation. Even though Dr. Vanden did come in and said that he could be recognized based off of these gang tattoos and that he might be associated or affiliated with a gang, this is undercut by Petitioner's own admission that if you're going to look at him. That's really the triggering event in Petitioner's case. He's going to be recognized as a gang member. He is saying, if you just look at me, you're not going to see any signs of it. Is there a picture of the Petitioner in the record? There's pictures of his tattoos are in the record. Admittedly, the copy is not great, but he did describe the tattoos. Again, there's only one MS tattoo left. He admits that he was able to camouflage the other one, which was larger and on his leg, so in a more way than why he couldn't cover up the other MS tattoo. Not to get it removed, but to cover it up. This is a gap in the evidence, and it was Petitioner's burden to fill. I think Petitioner's counsel says what wasn't discussed in the decision. Is it your position that they wouldn't have been discussing it in the record if it didn't have something to do with the case, or what? We would disagree that it wasn't discussed in the decision. The immigration judge's decision specifically finds that he didn't give any evidence on why he couldn't camouflage it, or why he couldn't cover it up with another tattoo. He just didn't provide the evidence on it. Did the immigration judge specifically list out all the tattoos? No. But they rendered a finding that this was not substantial, particularly in light of the rest of the evidence, which is that if you just look at him, there is no trace of gang affiliation, and that's out of his own mouth. Again, in Amaya Andrade, this court clarified that Cole established that the board must consider the risk of torture posed by conspicuous tattoos that display affiliation with a gang. It does not establish that any tattoos are enough to justify cat relief. Let me just ask you one question. I think petitioners sort of started out with not really addressing the exhaustion issue, and then kind of came back on that. For hypothetical purposes, if we were to decide that we have jurisdiction to address the issue of whether the petitioner overcame the presumption that the petitioner's agency to analyze the criteria under the matter of YL, or if not, why? So, again, I just want to reiterate... I know what your position is. I'm not backing you off of that. But just say, if we didn't agree, does it need to be remanded? This court does hold the doctrine that remand would be futile, and we would recommend to the court that looking at the evidence, there simply isn't enough to show that... When we look at matter of YL, it not only requires those six factors, those are at a minimum. That's what the court said. At that point, there's still above and beyond evidence. And quite frankly, the government's position is that the court doesn't have jurisdiction to cover this, because the agency would have to be the first one in the first instance. But this is all the more reason why this was important to be exhausted, right? Because the agency should get the first dib at getting to evaluate the facts on the record, and it would be subverting Congressional intent on the exhaustion factor if this court were to evaluate those factors in the first instance, which is really weighing discretionary evidence. Refresh my recollection. When was the IJ hearing held, and when was the BIA hearing held? I believe... Well, there was multiple hearings before the IJ. Do you want to know when the decision was rendered? When were the hearings held? Was YL on the books by the time of the hearings? Yes, Your Honor. Okay, fine. Thank you. I see that my time's up. Do any of my colleagues have any additional questions? All right. Thank you for your argument. Please, the Court. Your Honors, I would like to address just a couple of points. Number one, counsel for the government said that the IJ and the Board completely considered Dr. Vanden's testimony not true. The agency never took into account, engaged, or considered Dr. Vanden's conclusion that Mr. Chavez would be tortured on account of all those different sources of torture that he discussed in the declaration. Well, Dr. Vanden didn't quite say that it would be a certainty that he would be tortured. Dr. Vanden said that there was a range of interrogation techniques used by the police, and sometimes they would just talk to him and find out where he was going, and sometimes they would beat him up. So he didn't say that this was, in this case, more probable than not that this man would be tortured, did he? That's correct, Your Honor, but the proper legal inquiry is considering the aggregate of torture from all different sources of torture, not just police, and not just police during the reception process. No, no, no. It's either the police torturing or others torturing with the acquiescence of the police. Correct. Now, acquiescence doesn't mean somebody gets tortured and the police don't know about it. That's not acquiescence. Acquiescence means that there is some positive role of substantial matter by the police in allowing the torture to occur. Where's the evidence of that? I believe the government took it off the table by considering that this issue was not decided by the agency on the issue of acquiescence. I have an additional question. At council table, could you identify who you have at council table? Who's at council table? This is Mr. Greg Countryman. One of your colleagues? Yes. Okay. Thank you. All right. Your time has expired, and I did give you a little additional time. Thank you very much. Thank you both for your argument in this matter. It will stand submitted.
judges: Callahan, Bea, Whaley